IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| VICKI A. LINDSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:11CV447–HEH |
| ) | |
| HIGHWOODS REALTY LIMITED ) | |
| PARTNERSHIP, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Defendants' Motions for Summary Judgment)

This premises liability action is presently before the Court on Defendants' Motions for Summary Judgment (Dk. Nos. 39 & 40). In this lawsuit, Vicki A. Lindsey ("Plaintiff") has sued Highwoods Realty Limited Partnership, HRLP NC VA, L.P., and Highwoods Properties, Inc. (collectively "Highwoods"), as well as Western Industries-South, LLC ("Western") to recover for injuries allegedly arising out of exposure to the toxic substance Merphos. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons discussed herein, Highwoods' and Western's (collectively "Defendants'") Motions for Summary Judgment will be granted.

## I. <u>BACKGROUND</u>

This action for premises liability and negligent application of a banned or illegal substance arises out of Plaintiff's alleged exposure to the toxic chemical Merphos. Vicki Lindsey ("Plaintiff") entered into a sublease agreement in January 2005 to lease office space in a building owned by HRLP NC-VA, LP (formerly Highwoods Realty Limited Partnership) and managed by Highwoods Realty. The building where the alleged exposure occurred was constructed in 2001. In December 2004, Highwoods contracted with Western for the provision of pest control services at the property. (Highwoods' Br. in Supp. of Mot. for Summ. J. [hereinafter "Highwoods' Br."] at 4.)

After leasing the office space for a number of years, Plaintiff's Complaint alleges that she entered the office space after hours on July 18, 2008, and smelled a "strange gaseous odor" on the first floor. She also observed a number of dead insects within the building. (Notice Removal Ex. A at 2–3.) In late July or early August, Plaintiff claims that she began to experience a number of adverse health symptoms. Suspecting an environmental cause for her symptoms, Plaintiff eventually hired a certified laboratory on December 8, 2008, to conduct environmental testing in her building. Specifically, she had wipe samples taken around the office space and analyzed. (Id.)

The initial laboratory tests indicated the presence of the organophosphate herbicide S,S,S'-tributyl phosphorothrithioite, commonly referred to as Merphos. According to Plaintiff, this compound has been banned from legal sale and use as a pesticide by the Environmental Protection Agency. *Id.* Armed with these initial

laboratory results Plaintiff filed her Complaint, alleging that in July 2008, Western, acting on behalf of Highwoods, applied the pesticides in the building where Plaintiff rented office space. *Id.* As a result of this application, Plaintiff claims that she sustained a number of health injuries.

After providing its initial results, however, the laboratory that initially detected the Merphos indicated in a subsequent email to Plaintiff that the result was likely a false positive. (Highwoods' Br., Ex. C. at 2.) Specifically, after Plaintiff contacted the laboratory to discuss the underlying data, the laboratory Operations Manager reviewed the data and concluded that the original results were likely incorrect. In reaching this conclusion, the Operations Manager conducted an in depth review of the analytical data generated and its original interpretation. Ultimately the laboratory concurred that "the reported merphos detection in [the building was] likely a false positive." (Id. at 4.)

Western maintains that it has never used Merphos in any of the pesticides it has used. Furthermore, Western denies using any organophosphates in the pesticides it has applied since 1994. (Highwoods' Br. at 4.) To support these assertions, Highwoods also took wipe samples from the building in July 2010, and had them analyzed for Merphos. The results showed no evidence of any Merphos in the building. (Id. at 3.) On January 6, 2012, both Highwoods and Western filed separate Motions for Summary Judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

3

of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists if the evidence, when viewed "in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the movant meets this initial burden, however, the nonmoving party may not rest upon mere allegations in the pleadings, but instead "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e))[1] (emphasis in original). The absence or presence of a genuinely disputed fact must be demonstrated by "citing to particular parts of materials in the record,"[2] or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a

---

[1] Fed. R. Civ. P. 56 was revised in December 2010. This case quotes an older version of the rule.
[2] This includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

4

motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir.1992).

It is well established that the mere existence of some factual dispute will not necessarily defeat an otherwise properly supported motion for summary judgment; rather "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-4 9, 106 S. Ct. 2505, 2510 (1986). Whether a fact is considered to be material is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Id.*

### III. ANALYSIS

In their motions, both Highwoods and Western contend that summary judgment is appropriate because Plaintiff cannot make out a prima facie case of premises liability or negligent application of a banned substance absent any evidence that Merphos was present in the office space where the alleged exposure occurred. In response, Plaintiff maintains that she has presented sufficient evidence to rise above mere speculation or conjecture, and that a rational trier of fact could find that she was exposed to Merphos in the office building she rented from Highwoods.

A federal court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79, 58 S. Ct. 817, 822 (1938). In

Virginia, to establish a prima facie negligence claim, a plaintiff bears the burden of proving "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003); *see also Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 443 (Va. 1951). To prove negligence in a premises liability case such as this, the plaintiff must first prove the existence of an unsafe or dangerous condition. *Hodge v. Wal–Mart Stores, Inc.*, 360 F.3d 446, 451 (4th Cir.2004); *see also Kendrick v. Vaz, Inc.*, 244 Va. 380, 421 S.E.2d 447, 450 (1992). Next, "a plaintiff must, in order to establish a defendant's negligence, prove 'why and how the incident happened.'" *Id.* at 451 (quoting *Town of West Point v. Evans*, 299 S.E.2d 349, 351 (Va. 1983)). In cases where "the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover." *Town of West Point v. Evans*, 224 Va. 625, 299 S.E.2d 349, 351 (1983).

Thus in the instant case, Plaintiff must prove at the outset that there is a genuine issue for trial as to the existence of an unsafe condition. At the time Plaintiff filed her Complaint, the analytical data generated by the testing laboratory, TestAmerica, Inc. indicated the presence of Merphos in a sample taken from the baseboards inside of the office building. However, TestAmerica later indicated that the initial analysis was likely incorrect—a false positive. Additionally, analytical data generated on behalf of Highwoods indicates that Merphos was not present in the building at the time the samples were taken in July 2010.

In spite of this collapse in analytical support for the contention that Merphos was applied in the building, Plaintiff nevertheless insists that sufficient circumstantial evidence exists to survive summary judgment. Specifically, Plaintiff argues that although Western denies using pesticides in the building in July 2008, "she encountered numerous dead bugs and the smell of decay when she entered the Building after hours in July 2008." (Pls.' Br. in Opp'n to Def. Western Industries-South's Mot. Summ. J. [hereinafter "Pl.'s Br. Western"] at 3.)

Plaintiff also relies on her apparent medical injuries as circumstantial evidence relating to the presence of Merphos. For example, Plaintiff points to her treating neurologist's initial impressions on her visit to his office in July 2009. After noting in his assessment "peripheral neuropathy: Other inflammatory and toxic neuropathy . . . [p]oisoning by organophospherous anticholinesterase", the neurologist observed that the symptoms "may be seen with early systemic illness such as diabetes and vitamin B12 deficiency but may also be seen in toxic neuropathies such as that seen with organophosphate poisoning and heavy metal poising." (Pl.'s Br. Western at 2-3.)

In addition to the initial impressions of her neurologist, Plaintiff also cites to the deposition of her medical expert, Dr. Gunnar Heuser. After reviewing information on Plaintiff's symptoms and medical records, as well as depositions of Plaintiff and her neurologist, Dr. Heuser concluded that she developed a multi-system disorder caused by

7

toxic chemical exposure. Moreover, the aggregate of her symptoms indicated an exposure to an organophosphate.[3] (Id. at 3.)

Finally, Plaintiff cites the testimony of her toxicology expert, Dr. Staiken to contradict the TestAmerica's conclusion that the Merphos result was a false positive. In part, Dr. Staiken testified that he was not "sure in looking at the analytical method [TestAmerica] used and having done that type of analysis . . . that they didn't have a hit of something." (Pl.'s Br. Western, Ex. I at 1.) According to Dr. Staiken, "it had to be some type of organophophate to have given [TestAmerica] that hit." (Id.) However, Dr. Staiken could ultimately offer no conclusion or opinion as to what chemical might have caused the hit. (Def.'s Rebuttal Br. in Supp. Mot. for Summ. J. at 5.)

In sum, Plaintiff attempts to string together a few pieces of circumstantial evidence to meet her initial burden of proving a reasonable jury could find that a dangerous condition—the pesticide Merphos—existed in her office space. However, the fact remains that Plaintiff has yet to produce a single piece of evidence or expert testimony that Merphos, or any other toxic chemical, was present in the office building.[4] Although Plaintiff has produced an expert that will testify that she suffers from exposure to a toxic substance, there is simply no evidence as to where that exposure may have

---

[3] Dr. Heuser's report, however, does not specifically implicate the pesticide Merphos. Rather, he states that her "symptoms are entirely compatible with toxic chemical exposure to pesticides/organophosphates." He then goes on to conclude that he believes Plaintiff "indeed suffers from the effects of toxic pesticide exposure." (Def.'s Br. in Supp. of its Mot. for Summ. J., Ex I at 2-3.)

[4] In Plaintiff's initial response to Defendants' motions for summary judgment, she argues that the original analytical tests performed by TestAmerica may have overlooked the presence of another toxic organophosphate. Plaintiff has since amended her brief, conceding that TestAmerica tested for a panel of organophosphates and did not detect the presence of any other substance. (Pl.'s Mot. for Leave to Amend Br. in Opp'n to Def. Highwood's Mot. for Summ. J. at 1.)

8

occurred. Plaintiff's testimony that she smelled something unusual and noticed dead bugs in the building simply does not rise above mere speculation, even coupled with her expert medical diagnosis. Thus, no reasonable juror could find that a dangerous condition existed in the building. Plaintiff has failed to satisfy this initial hurdle; therefore, Defendants' motions for summary judgment are granted.

## IV. CONCLUSION

For the reasons stated above, Highwoods's and Western's Motions for Summary Judgment will be granted.

An appropriate Order will accompany this Memorandum Opinion.

HEH  /s/
_____
Henry E. Hudson
United States District Judge

Date: Feb 3 2012
Richmond, VA